**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

AMERICAN WAVE MACHINES, INC.,
Plaintiff,

v.

WHITEWATER WEST INDUSTRIES LTD.
Defendant.

Case No. __________

JURY TRIAL DEMANDED

**COMPLAINT**
**PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF REQUESTED**

Plaintiff, American Wave Machines, Inc. ("AWM" and "Plaintiff"), by and through its undersigned counsel, brings this action for patent infringement against Defendant WhiteWater West Industries Ltd. ("WhiteWater" and "Defendant"), and alleges as follows:

**NATURE OF ACTION**

1. This is a civil action for patent infringement. This action is based upon the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. §§ 271, 281, 283, 284, and 285.

2. AWM is a pioneer and industry leader in the innovation, design, and development of sequenced-chamber, pneumatically actuated wave-generation technology used to create surfable waves in artificial wave pools ("surf parks"). AWM's patented technology, for example, allows a controller to actuate a plurality of wave-generating structures, arranged adjacent to one another along an edge of a pool, in a sequenced and timed fashion so as to generate a wave whose peak travels generally across the width of the pool, replicating, on demand, peeling waves that surfers seek in the ocean and optimizing the length of the ride.

3. WhiteWater makes, uses, sells, offers for sale, and/or imports into the United States, and/or induces and contributes to the making, use, sale, offer for sale, and/or importation of, wave pool systems including the wave-generation apparatus, systems and methods marketed under the "Endless Surf™" brand that infringe one or more claims of AWM's asserted patents identified below (collectively, "Endless Surf" and "Accused Products"). These Accused Products include, without limitation, the Endless Surf ES36 pneumatic wave-generation system, apparatus, and method at The Point Surf Park, 9600 Mesa Park D Boulevard, Fellsmere, Florida 32948, in this District (the "Accused Facility"), which, on information and belief, is set to open in a few months as the first Endless Surf facility in the United States.

4. AWM has provided WhiteWater with notice of AWM's patent portfolio, and of AWM's contention that the Endless Surf product line infringes that portfolio.

5. In addition, and independently of that notice, AWM has given constructive notice of its patents pursuant to 35 U.S.C. § 287(a) through its consistent marking, including virtual marking on its website, of its patented wave-generation products.

6. Nevertheless, WhiteWater has continued to develop, manufacture, sell, offer for sale, and support the installation and operation of the infringing Endless Surf product at the Accused Facility, and elsewhere in the United States, despite that notice, warranting a finding of willful infringement and an award of enhanced damages under 35 U.S.C. § 284 and a finding that this case is "exceptional" and an award of AWM's reasonable attorneys' fees under 35 U.S.C. § 285.

7. AWM has been irreparably harmed by WhiteWater's infringement. Unless it is preliminarily and permanently enjoined, WhiteWater will continue to harm AWM irreparably. Monetary damages alone cannot compensate for this harm to AWM.

## THE PARTIES

8. Plaintiff AWM is a California corporation with its principal place of business at 224 South Cedros Avenue, Suite C, Solana Beach, California 92075.

9. On information and belief, Defendant WhiteWater is a corporation organized under the laws of Canada, with a principal place of business at 180-6651 Fraserwood Place, Richmond, British Columbia V6W 1J3, Canada, and is the entity (or an affiliate operating under the same corporate family) that designs, manufactures, markets, offers for sale, sells, and/or supports the installation, commissioning, and operation of the Endless Surf line of wave-generation systems, including the Accused Products, in the United States, including at the Accused Facility in this District.

10. AWM's investigation to date has identified Defendant, and/or related entities including those under the names "WhiteWater West Industries Ltd., Inc." (registered with the state of Florida as a foreign profit corporation (Doc. No. F93000002603)), "WhiteWater West Industries, Inc." (registered with the state of Florida as a foreign profit corporation (Doc. No. F08000005314)), "Endless Surf Ltd.," and "WhiteWater West Limited"; AWM reserves the right to amend this Complaint if necessary to name the precise corporate entity or entities within the WhiteWater/Endless Surf corporate family responsible for the acts alleged herein once that structure is confirmed through discovery or otherwise.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Patent Laws of the United States, Title 35, United States Code, including 35 U.S.C. § 271 *et seq*.

12. This Court has personal jurisdiction over WhiteWater pursuant to Section 48.193, Florida Statutes, because this action arises out of, *inter alia,* (1) WhiteWater's operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this State, and (2) WhiteWater's committing tortious acts in this State. This Court has personal jurisdiction over WhiteWater for at least both reasons stated above. For example, it has committed, and continues to commit, acts of patent infringement in this District, has purposefully availed itself of the privilege of conducting business in this District in connection with the design, construction, installation, commissioning, marketing, sale, offering for sale, and/or operation of the Accused Facility, and has established minimum contacts with this District such that the exercise of personal jurisdiction would not offend traditional notions of fair play and substantial justice.

13. This Court has personal jurisdiction over WhiteWater because, on information and belief, WhiteWater sold, offered for sale, and purposefully directed the design, manufacture, supply, delivery, installation, and/or commissioning of the Accused Products to the Accused Facility in this District, entered into a supply and/or services relationship targeting this District, and has committed and continues to commit acts of infringement in this District through the abovementioned infringing acts associated with the Accused Products it designed, sold, offered for sale, supplied, and/or supports at the Accused Facility.

14. To the extent WhiteWater is a foreign entity not subject to jurisdiction in any single state, personal jurisdiction is independently proper pursuant to Fed. R. Civ. P. 4(k)(2) based on WhiteWater's aggregate contacts with the United States, including multiple aquatic activity-related project installations across several states (https://www.whitewaterwest.com/projects/).

15. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1400(b). The Accused Facility is located at 9600 Mesa Park D Boulevard, Fellsmere, Florida 32948, in Indian River County, which lies within the Southern District of Florida. A substantial part of the events giving rise to this action, including the making, using, and/or commissioning of the Accused Products at the Accused Facility, has occurred and continues to occur at that location. On information and belief, WhiteWater and/or its affiliates have committed acts of infringement in this District and have a regular and established place of business in this District constituted by the Accused Facility itself, which WhiteWater offered for sale, sold, designed, supplied, and continues to support on an ongoing basis. WhiteWater is also a foreign corporation not residing in the United States that may be sued in any judicial district under 28 U.S.C. § 1391(c)(3).

## FACTUAL BACKGROUND

### AWM's Patented Wave-Generation Technology

16. AWM designs, engineers, manufactures and develops world-class surf pools, wave systems and surf venues. Founded in 2000 by California surfer and engineer Bruce McFarland, the company defined the "Surf Venue" at the prestigious MIT Forum at the Salk Institute in April of 2009. Since then, AWM's inventive designs and systems were employed in the first commercially successful stand-alone surf venues that have opened all over the world, including Waco, Texas, Japan, China, and Brazil. With surfing in the Olympics for the first time, AWM's PerfectSwell® facility in Japan was the training platform for Olympic Athletes leading up to the 2021 Olympic Games. PerfectSwell® is the first surf pool system capable of creating an authentic paddle in surfing experience that delivers the real ocean dynamics found in nature.

17. AWM has devoted more than two decades to innovating and developing wave pool-related architecture systems and methods, such as a surf pool equipped with a plurality of

pneumatic wave-generating chambers located adjacent to one another along an edge of the pool, each having, for example, a valve structure connected to a controller. The controller can be used to actuate the chambers in a precisely timed sequence, releasing water from a first chamber, then, after a calibrated delay, from a second chamber, and so on, so that the individually released volumes of water combine into a wave, for example, whose peak travels mostly parallel to the wave generating chambers in the pool.

18. AWM's foundational work in this field has been recognized with an extensive worldwide patent portfolio, including more than 20 patents and patent applications on this innovative technology in the United States. This includes United States Patent Nos. 9,279,263 ("the '263 Patent"; Exhibit 1) and 8,434,966 ("the '966 Patent"; Exhibit 2) asserted in this action (collectively "the Asserted Patents"), which are generally directed to sequenced-chamber wave-generating apparatus and methods, and associated control systems configured to operate them. AWM is the sole and exclusive owner of all rights, title, and interest in and to each of the Asserted Patents, including the exclusive right to sue for, and recover damages for, past, present, and future infringement, and the right to seek injunctive relief. Each of the Asserted Patents is valid and enforceable.

19. AWM's first PerfectSwell® facility was opened in Waco, Texas in May 2018. The Waco facility was massively popular, and sessions sold out weeks ahead of time. It quickly became a leading destination for surfers through both general press, and user-generated, social media content that went viral. NPR published a piece reporting specifically on the popularity of the Waco facility, highlighting that the "machine-made waves are so good they attract top professionals as well as casual surfers" (https://www.npr.org/2021/09/12/1036054924/surfers-are-trading-natural-waves-for-artificial-ones-in-waco-texas).

20. PerfectSwell® has been recognized as a groundbreaking innovation in the industry. For example, SURFER described PerfectSwell as: "going to change the game of surfing entirely", "our minds are going to continue to be blown and the new standard for aerial surfing is going to be rewritten again" (https://www.surfer.com/news/best-wave-pool-air-section-sao-paulo-surf-club).

21. As another example, in 2025, PerfectSwell® earned second place in Blooloop's Innovation Awards, within the "Experiential Technology" category ("PerfectSwell Gen 6 redefines the boundaries of human-water interaction through advanced hydraulic design, adaptive software control, and sensory immersion…Gen 6 stands as a pioneering achievement in the future of active entertainment" (https://blooloop.com/perfectswell-gen-6/)).

**WhiteWater and Its Infringing Endless Surf Product**

22. On information and belief, the Endless Surf line of pneumatic wave pool systems is designed, manufactured, marketed, and sold by WhiteWater and/or its corporate affiliates operating under the WhiteWater West / Endless Surf trade names.

23. Apparently, recognizing the enormous value of AWM's inventions, WhiteWater commenced a campaign to copy AWM's patented technology and mimic AWM's PerfectSwell® technology. In 2019, WhiteWater expressed interest in AWM's PerfectSwell® technology and urged AWM to grant an exclusive license to WhiteWater. When it became clear AWM would not do so, WhiteWater told AWM that WhiteWater could simply "duplicate" and sell AWM's technology. Shortly thereafter, in November 2019, WhiteWater hired away Clement Ginestet, an AWM PerfectSwell® engineer of eight years and a named inventor on certain AWM patents. In May 2020—only six months after hiring Mr. Ginestet—WhiteWater announced its entrance into the surf pool industry with Endless Surf, a knockoff system using the very same surf technology

created and patented by AWM and embodied in AWM's PerfectSwell®. Mr. Ginestet was the first wave engineer working on Endless Surf and remained its only wave engineer for at least a few years. Tellingly, Mr. Ginestet took only six months to purportedly singlehandedly bring to market Endless Surf, allegedly "from scratch"—essentially the same technology that previously took AWM's team almost two decades to develop.

24. Andrew Thatcher, WhiteWater's Vice President of Business Development, has publicly confirmed that "WhiteWater West Industries is the company behind Endless Surf," and that WhiteWater's business model is "built on manufacturing and selling equipment," supported by a workforce of approximately 600 employees.

25. WhiteWater markets the Endless Surf system as employing "pneumatic caissons", wave-generating chambers, "arranged along the back wall of the lagoon" that "are fully programmable, allowing operators to dial in wave height, frequency, direction, and style on-demand," with models named for their chamber count, ranging from ES24 (24 chambers) to ES60 (60 chambers).

26. Mr. Thatcher explained in a recorded interview (https://www.youtube.com/watch?v=obR1MkcCDe4) that each Endless Surf chamber, approximately 10 feet wide, "is then connected with a series of valves to what's known as a plenum," and that "the wave is then created by releasing air into the chambers in a certain sequence." He further explained that, to create the wave, "the air inside the wave chamber is exhausted and then re-pressurized in one quick motion so that all that water from the pool goes up into the chamber and then it's pushed down very, very quickly," and that a proprietary control system "connects an interface to all of the valves in the pool," enabling an operator to select and program distinct wave profiles, including "A-frame" waves that peel simultaneously to the left and

right from a center point, "Single Peak" waves that generally run the width of the pool, and waves varying in height, shape (including barrels), and section-by-section characteristics, by pressing a button or programming the controller.

27. WhiteWater's own marketing materials confirm that the Endless Surf system offers "[u]nlimited chamber sequencing and wave creation potential," "Split Peak" and "Single Peak" operating modes, and ride times of up to approximately 25 to 32 seconds depending on the model, and that the system "can operate fully even if a chamber is out," confirming that each chamber's valve structure is actuated, and can be actuated, independently of the others.

28. The marketing materials also state that the Endless Surf system has the ability to adjust wave shape, size, speed, angle, and section-by-section characteristics via the controller, all consistent with, and confirmatory of, the sequenced, timed, independently actuated chamber architecture and methods claimed in the Asserted Patents.

**<u>The Accused Facility: The Point Surf Park, Fellsmere, Florida</u>**

29. On information and belief, TPSP Holdings, LLC is the owner and/or developer of The Point Surf Park development located at 9600 Mesa Park D Boulevard, Fellsmere, Florida 32948, within this District, featuring an Endless Surf ES36 pneumatic wave system purchased from and supplied by WhiteWater (i.e., a 36-chamber configuration) as its centerpiece attraction.

30. Luiz De Araujo, an authorized member of TPSP Holdings LLC, described the wave-generation mechanism as follows: "the water needs to stand up. So it pushes over, and then like I said, a domino effect, right? Imagine, one, two, three, four, five, the water stands up and it moves down the line," referring to the sequential firing of the pneumatic chambers along the pool's back wall (https://www.youtube.com/watch?v=thGB5FLvYeg).

31. Mr. De Araujo further explained that the operations booth houses "the computer," from which operators select "beginner waves, expert wave, barrel, air, so on and so forth," and confirmed that the chambers "are kind of firing off at different times to create that shape." (*Id.*)

**Defendant's Knowledge of AWM's Patent Portfolio and Pre-Suit Notice**

32. AWM has placed WhiteWater and its corporate affiliates on actual notice of AWM's patent portfolio, including the Asserted Patents, and of AWM's position that the Endless Surf product line infringes AWM's patents.

33. In fact, in or around early 2019, WhiteWater expressed interest in AWM's PerfectSwell® technology. Over the next several months (into the fall of 2019), AWM and WhiteWater engaged in licensing negotiations. Despite acknowledging the strength of AWM's patent position in the United States, WhiteWater nevertheless threatened that, if a deal was not reached, it would simply "duplicate" AWM's patented PerfectSwell ® technology and sell it everywhere around the world. Thus, WhiteWater was well-aware of the Asserted Patents, and in fact sought a license to them, as of no later than June 13, 2019.

34. WhiteWater also clearly possessed actual knowledge of the '966 Patent and the '263 Patent no later than May 19, 2022, when WhiteWater petitioned for *inter partes* review of the Asserted Patents[1] and filed a declaratory judgment action[2] putting both patents squarely at issue. After the Patent Trial and Appeal Board issued Final Written Decisions in the IPRs, confirming the patentability of all the claims of the '263 and '966 Patents that are being asserted by AWM herein, WhiteWater also summarily dismissed its declaratory judgment lawsuit.

---

1 IPR2022-01033 and IPR2022-01034, respectively.

2 *WhiteWater West Industries, Ltd. v. American Wave Machines, Inc.,* No. 3:22-cv-00729 (S.D. Cal.).

35. Later, in connection with WhiteWater's first operational Endless Surf facility in Munich, Germany, by letter dated January 24, 2023, counsel for AWM notified Surftown GmbH, a European customer of WhiteWater's Endless Surf product, of AWM's infringement allegations concerning the Endless Surf product.

36. WhiteWater's counsel responded on WhiteWater's behalf by letter dated February 6, 2023, acknowledging that WhiteWater was well aware of AWM's patent portfolio. This is a direct admission that WhiteWater developed and commercialized the copycat Endless Surf system despite actual knowledge of AWM's patents.

37. Accordingly, on several separate occasions since at least June 13, 2019, WhiteWater and its corporate affiliates have repeatedly been put on actual notice and/or confirmed their actual knowledge of AWM's patent portfolio, including the Asserted Patents, and that the Endless Surf product infringes AWM's patents.

38. Despite this actual notice, WhiteWater has continued to design, manufacture, market, sell, offer for sale, and/or support the installation, commissioning, and ongoing operation of the infringing Endless Surf product in the United States, including at the Accused Facility, without a license from AWM. On information and belief, construction and ongoing commissioning of the Endless Surf ES36 system at the Accused Facility began after WhiteWater admitted full knowledge of AWM's patent portfolio.

39. Independently of, and in addition to, the actual notice described above, AWM has given, and continues to give, constructive notice of the Asserted Patents pursuant to 35 U.S.C. § 287(a) by consistently marking its patented wave-generation products with the applicable patent numbers, including through virtual marking on AWM's website (https://perfectswellsurf.com/) in accordance with 35 U.S.C. § 287(a).

40. AWM's website, located at perfectswellsurf.com, displays a dedicated patent notice stating that "PerfectSwell® and Infinite Ocean[™] technology may be protected by" a list of United States patents that includes the Asserted Patents: U.S. Patent Nos. 9,279,263 and 8,434,966.

41. AWM's virtual patent marking of the PerfectSwell®/Infinite Ocean™ products with the '966 Patent began at least as early as July 19, 2019 and has been continuously maintained since that time.

42. AWM's virtual patent marking of the PerfectSwell®/Infinite Ocean™ products with the '263 Patent began at least as early as December 10, 2020, and has been continuously maintained since that time.

43. AWM's marking of its patented products, including through the virtual marking practices described above, has been continuous with respect to the above-identified Asserted Patents throughout the periods for which AWM seeks damages in this action.

44. Accordingly, and independently of the actual notice alleged above, Defendant, and the public generally, have been on constructive notice of the '263 Patent and the '966 Patent, since at least the date AWM's marking of those patents began, entitling AWM to damages for infringement of those patents dating back to that constructive notice date, in addition to and independent of the actual notice dates alleged above.

## THE ASSERTED PATENTS

45. AWM is the owner by assignment or original grant of the following United States patents (collectively, the "Asserted Patents"), true and correct copies of which are attached hereto as Exhibits 1 and 2:

| **Patent Nos. (Exhibits 1 & 2)** | **Title** | **Issue Date** | **Claims Charted (Exhibits 3 & 4)** |
|---|---|---|---|
| U.S. 9,279,263 ("the '263 Patent") (Exhibit 1) | Sequenced Chamber Wave Generator Apparatus and Method | March 8, 2016 (all claims confirmed per IPR2022-01034 certificate, Feb. 8, 2024) | Claims 1, 3, 4, 8-15, 17-19 (Exhibit 3) |
| U.S. 8,434,966 ("the '966 Patent") (Exhibit 2) | Sequenced Chamber Wave Generator Apparatus and Method | May 7, 2013 (claims 3-6, 8 and 12-15 confirmed per IPR2022-01033 certificate, Feb. 8, 2024) | Claims 3-6, 8, 12-15 (including intervening claims) (Exhibit 4) |

46. AWM is the sole and exclusive owner of all rights, title, and interest in and to each of the Asserted Patents, including the exclusive right to recover for infringement and the right to seek injunctive relief as appropriate under law.

47. Each of the Asserted Patents is valid and enforceable.

48. Attached hereto as Exhibits 3 and 4 are claim charts prepared by AWM mapping the elements of the charted claims of each respective Asserted Patent onto the Accused Products, based on WhiteWater's own publicly available marketing materials, publicly available technical descriptions, recorded statements by WhiteWater/Endless Surf personnel and by the developer of the Accused Facility[3], and AWM's technical analysis, each of which is incorporated by reference as though fully set forth and pled in the corresponding Count(s) below.

**COUNT I – INFRINGEMENT OF U.S. PATENT NO. 9,279,263**

49. AWM incorporates by reference each of paragraphs 1-47 above as though fully set forth herein.

50. The '263 Patent, titled "Sequenced Chamber Wave Generator Apparatus and Method," was duly and lawfully issued by the USPTO on March 8, 2016.

---

[3] *See*, Exhibits 5 to 16.

51. Following inter partes review (IPR2022-01034), the USPTO issued a certificate on February 8, 2024, confirming that claims 1-19 of the ’263 Patent are patentable.

52. A true and correct copy of the ’263 Patent, including the IPR certificate, is attached hereto as Exhibit 1.

53. On information and belief, and as set forth in detail in the claim chart attached hereto as Exhibit 3 (incorporated by reference), the Accused Products meet each and every limitation of at least claims 1, 3, 4, 8-15, and 17-19 of the ’263 Patent, literally and/or under the doctrine of equivalents.

54. WhiteWater has directly infringed, and continues to directly infringe, at least these claims of the ’263 Patent under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing into the United States, including at the Accused Facility in this District, the Accused Products without authority or license from AWM.

55. On information and belief, WhiteWater has contributed to and/or induced, and continues to contribute to and/or induce, infringement of at least these claims of the ’263 Patent under 35 U.S.C. §§ 271(b) and/or 271(c) by actively and knowingly encouraging, instructing, and assisting other parties, including, without limitation, TPSP Holdings, LLC, Aquatic Design & Engineering, Inc. and Martin Aquatic Design & Engineering, LLC (d/b/a collectively as Martin Aquatic; collectively “Martin Aquatic”) and other developers, owners, and operators of Endless Surf installations, including at the Accused Facility, to make and/or use the Accused Products and components thereof, in a manner that directly infringes these claims of the ’263 Patent, through the provision of marketing materials, technical specifications, design and engineering support, installation support, commissioning support, operator support, and control software and interface

technology, with knowledge that such acts constitute infringement of the claims of ’263 Patent, and with the specific intent to cause such infringement.

56. To the extent the Accused Products are supplied, offered for sale, sold, or installed in the form of component parts (including, without limitation, pneumatic wave-generating chamber modules, valve assemblies, plenum and air-supply systems, and control/software systems) that are assembled into an infringing apparatus by a party other than the component supplier, WhiteWater has contributorily infringed, and continues to contributorily infringe, at least these claims of the ’263 Patent under 35 U.S.C. § 271(c).

57. On information and belief, those components are especially made or especially adapted for use in an infringement of the ’263 Patent, constitute a material part of the claimed invention, and are not staple articles of commerce suitable for substantial non-infringing use, and WhiteWater has supplied those components with knowledge of the ’263 Patent and knowledge that they are especially made or adapted for use in an infringement of the ’263 Patent.

58. As set forth above, since no later than June 13, 2019, with independently established notice of at least May 19, 2022, then again by further actual and independent notice of no later than February 6, 2023, WhiteWater has had actual knowledge of AWM’s patent portfolio and of AWM’s contention that the Endless Surf products infringe that portfolio.

59. In addition, and independently of that actual notice, WhiteWater and the public have been on constructive notice of the ’263 Patent since at least December 10, 2020—the date AWM’s virtual marking of that patent began, as detailed above. Despite that knowledge, WhiteWater has continued to make, use, sell, offer for sale, and/or support the Accused Products.

60. WhiteWater’s infringement of the ’263 Patent has been, and continues to be, willful and egregious, entitling AWM to enhanced damages under 35 U.S.C. § 284.

61. As previously noted, WhiteWater preemptively attempted to challenge the Asserted Patents in two separate proceedings: (i) WhiteWater petitioned for *inter partes* review of both Asserted Patents at the Patent Office, and (ii) simultaneously filed a declaratory judgment action in the Southern District of California (No. 3:22-cv-00729) seeking a declaration that the ’966 and ’263 Patents, among others, were invalid and/or not infringed by WhiteWater’s Endless Surf product. Notably, although WhiteWater’s declaratory judgment complaint summarily asserted it did not infringe AWM’s patents, WhiteWater failed to offer a single reason alleging why its Endless Surf product does not practice the claims of the ’263 Patent.

62. After the Patent Trial and Appeal Board confirmed the patentability of all the claims of the Asserted Patents at issue in this Complaint in a Final Written Decision on February 8, 2024, WhiteWater voluntarily dismissed its declaratory judgment action, thereby acknowledging that the additional invalidity and non-infringement allegations raised in its declaratory judgment complaint lacked merit.

63. WhiteWater does not have a license or other authorization from AWM to make, use, sell, offer for sale, or import products or methods covered by the ’263 Patent.

64. As a direct and proximate result of Defendant’s infringement of the ’263 Patent, AWM has suffered, and will continue to suffer, damages, including lost profits and/or a reasonable royalty, in an amount to be determined at trial, together with irreparable harm for which there is no adequate remedy at law.

65. WhiteWater’s deliberate copying of AWM’s patented technology and ongoing willful infringement of the ’263 Patent also warrants a finding that this is an “exceptional case” under 35 U.S.C. § 285, entitling AWM to an award of its reasonable attorneys’ fees.

66. In addition, and independent of the damages sought above, WhiteWater's infringement of the '263 Patent has caused, and unless enjoined will continue to cause, irreparable harm to AWM for which there is no adequate remedy at law. AWM and WhiteWater are direct competitors in a small, emerging market for pneumatic surf-pool technology in which projects are limited in number and each installation serves as a highly visible reference site for future business. Each infringing sale by WhiteWater represents a project, license, or developer relationship that AWM has lost or stands to lose, and enables WhiteWater to erode AWM's pricing power, market share, and exclusivity by offering a lower-cost substitute for AWM's patented PerfectSwell® technology on terms AWM cannot match.

67. WhiteWater's infringement is further eroding AWM's goodwill and its relationships with developers, funders, and licensees by blurring the distinction between AWM's patented technology and WhiteWater's knockoff offering, and by threatening the loss of future business opportunities arising from those relationships.

68. These harms are ongoing and cannot be fully remedied by monetary damages alone. AWM is therefore entitled to injunctive relief pursuant to 35 U.S.C. § 283 in addition to damages.

**COUNT II – INFRINGEMENT OF U.S. PATENT NO. 8,434,966**

69. AWM incorporates by reference each of paragraphs 1-47 above as though fully set forth herein.

70. The '966 Patent, titled "Sequenced Chamber Wave Generator Apparatus and Method," was duly and lawfully issued by the United States Patent and Trademark Office ("USPTO") on May 7, 2013.

71. Following inter partes review (IPR2022-01033), the USPTO issued a certificate on February 8, 2024, confirming that claims 3-6, 8, and 12-15 of the '966 Patent are patentable.

72. A true and correct copy of the ’966 Patent, including the IPR certificate, is attached hereto as Exhibit 2.

73. On information and belief, and as set forth in detail in the claim chart attached hereto as Exhibit 4 (incorporated by reference), the Accused Products meet each and every limitation of at least claims 3, 4, 5, 6, and 8 (apparatus claims) and claims 12, 13, 14, and 15 (method claims) of the ’966 Patent, literally and/or under the doctrine of equivalents.

74. WhiteWater has directly infringed, and continues to directly infringe, at least these claims of the ’966 Patent under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing into the United States, including at the Accused Facility in this District, the Accused Products without authority or license from AWM.

75. On information and belief, WhiteWater has contributed to and/or induced, and continues to contribute to and/or induce, infringement of at least these claims of the ’966 Patent under 35 U.S.C. § 271 by actively and knowingly encouraging, instructing, and assisting other parties, including, without limitation, TPSP Holdings, LLC, and Martin Aquatic as well as other developers, owners, and operators of Endless Surf installations, including at the Accused Facility, to make and/or use the Accused Products and components thereof in a manner that directly infringes these claims of the ’966 Patent, through the provision of marketing materials, technical specifications, design and engineering support, installation support, commissioning support, operator support, and control software and interface technology, with knowledge that such acts constitute infringement of the claims of the ’966 Patent, and with the specific intent to cause such infringement.

76. To the extent the Accused Products are supplied, sold, offered for sale, or installed in the form of component parts (including, without limitation, pneumatic wave-generating chamber modules, valve assemblies, plenum and air-supply systems, and control/software systems) that are assembled into an infringing apparatus by a party other than the component supplier, WhiteWater has contributorily infringed, and continues to contributorily infringe, at least these claims of the ’966 Patent under 35 U.S.C. § 271(c).

77. On information and belief, those components are especially made or especially adapted for use in an infringement of the ‘966 Patent, constitute a material part of the claimed invention, and are not staple articles of commerce suitable for substantial non-infringing use, and WhiteWater has supplied those components with knowledge of the ’966 Patent and knowledge that they are especially made or adapted for use in an infringement of the ’966 Patent.

78. Since, as detailed above, WhiteWater and its corporate affiliates have had actual notice of the ’966 Patent, since no later than June 13, 2019, with independently established notice of at least May 19, 2022, then again by further actual and independent notice of no later than February 6, 2023, WhiteWater has had actual knowledge of AWM’s patent portfolio directed to sequenced-chamber wave generation technology and of AWM’s contention that the Endless Surf product infringes that portfolio, including the ’966 Patent.

79. In addition, and independently of that actual notice, as detailed above, WhiteWater and the public have been on constructive notice of the ’966 Patent since at least the date AWM’s virtual marking of that patent began at least as early as July 19, 2019. Despite that knowledge, WhiteWater has continued to make, use, sell, offer for sale, and/or support the Accused Products, including at the Accused Facility.

80. WhiteWater's infringement of the '966 Patent has been, and continues to be, willful and egregious, entitling AWM to enhanced damages under 35 U.S.C. § 284.

81. As previously noted, WhiteWater preemptively attempted to challenge the Asserted Patents in two separate proceedings: (i) IPRs at the Patent Office, and (ii) a declaratory judgment action in the Southern District of California. Notably, although WhiteWater's declaratory judgment complaint summarily asserted it did not infringe AWM's patents, WhiteWater did not offer a single reason alleging why its Endless Surfproduct does not practice the claims of the '966 Patent.

82. After the Patent Trial and Appeal Board confirmed the patentability of all the claims of the Asserted Patents at issue in this Complaint in a Final Written Decision on February 8, 2024, WhiteWater voluntarily dismissed its declaratory judgment action, thereby acknowledging that the additional invalidity and non-infringement allegations raised in its declaratory judgment complaint lacked merit.

83. WhiteWater does not have a license or other authorization from AWM to make, use, sell, offer for sale, or import products or methods covered by the '966 Patent.

84. As a direct and proximate result of WhiteWater's infringement of the '966 Patent, AWM has suffered, and will continue to suffer, damages, including lost profits and/or a reasonable royalty, in an amount to be determined at trial, together with irreparable harm for which there is no adequate remedy at law.

85. WhiteWater's deliberate copying of AWM's patented technology and ongoing willful infringement of the '966 Patent also warrants a finding that this is an "exceptional case" under 35 U.S.C. § 285, entitling AWM to an award of its reasonable attorneys' fees.

86. In addition, and independent of the damages sought above, WhiteWater's infringement of the '966 Patent has caused, and unless enjoined will continue to cause, irreparable

harm to AWM for which there is no adequate remedy at law. AWM and WhiteWater are direct competitors in a small, emerging market for pneumatic surf-pool technology in which projects are limited in number and each installation serves as a highly visible reference site for future business. Each infringing sale by WhiteWater represents a project, license, or developer relationship that AWM has lost or stands to lose, and enables WhiteWater to erode AWM's pricing power, market share, and exclusivity by offering a lower-cost substitute for AWM's patented PerfectSwell® technology on terms AWM cannot match.

87. WhiteWater's infringement is further eroding AWM's reputation, goodwill, and its relationships with developers, funders, and licensees by blurring the distinction between AWM's patented technology and competing offerings, and by threatening the loss of future business opportunities arising from those relationships.

88. These harms are ongoing and cannot be fully remedied by monetary damages alone. AWM is therefore entitled to injunctive relief pursuant to 35 U.S.C. § 283 in addition to damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff AWM prays for relief as follows:

A. A judgment that Defendant has infringed, directly and/or by inducement and/or contributorily, one or more claims of each of the Asserted Patents;

B. A judgment that Defendant's infringement of each of the Asserted Patents has been willful;

C. A preliminary injunction enjoining Defendant, its officers, directors, agents, servants, employees, attorneys, and all persons acting in concert or participation with them, from further acts of infringement of the Asserted Patents, including further making, using, selling, offering for sale, importing, and/or supporting the installation, commissioning, or operation of

the Accused Products and any products not colorably different from the Accused Products that infringe the Asserted Patents;

D. A permanent injunction enjoining Defendant, its officers, directors, agents, servants, employees, attorneys, and all persons acting in concert or participation with them from further acts of infringement of the Asserted Patents, including further making, using, selling, offering for sale, importing, and/or supporting the installation, commissioning, or operation of the Accused Products and any products not colorably different from the Accused Products that infringe the Asserted Patents.

E. Compensatory damages in an amount commensurate with Defendant's infringement of the Asserted Patents, including without limitation lost profits and no less than a reasonable royalty;

F. Pre-judgment interest on all damages awarded to AWM;

G. Post-judgment interest on all sums awarded to AWM from the date of judgment;

H. An award of treble damages pursuant to 35 U.S.C. § 284 based on the willful and deliberate nature of Defendant's infringement;

I. A declaration that this case is exceptional and an award of AWM's reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

J. An award of costs and expenses of this action; and

K. Any and all other relief that the Court deems just and equitable.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff AWM hereby demands a jury trial on all issues raised by this complaint.

| | |
|---|---|
| Dated: September 28, 2026 | Respectfully submitted, |
| | /s/ C. Ryan Reetz |
| | C. Ryan Reetz<br>Florida Bar No. 934062<br>BRYAN CAVE LEIGHTON PAISNER LLP<br>200 S. Biscayne Blvd., #400<br>Miami, FL 33131<br>Telephone: 786-322-7500<br>Email: ryan.reetz@bclplaw.com |

Counsel for Plaintiff American Wave Machines, Inc.